Judge Underwood,
delivered the opinion of the court.
Markham declared against the plaintiffs in error in two counts, for batteries. The last count alleges a wounding. Shain, &c. plead by way of justification, “that the plaintiff broke and entered a certain house, situate in the county of Mercer, then and there subject to the control and in the actual occupancy of the defendants, and although often requested, refused to depart therefrom. Whereupon, the defendants, as *579 they well might do, gently laid. their hands upon, plaintiff to remove him from the said house, using no. further or other force than was necessary for that purpose, which, &c.” To this plea, the plaintiff replied,, “that at the time of' committing the several injuries, in the declaration mentioned, the house, in the plea men--tioned, was a dwelling house, in the possession and occupation of, as well the plaintiff as the defendants, and divers other persons holding and occupying-the same,, in common; and that the defendants made-the several assaults, &c.” To this replication the defendants rejoined, uthat the plaintiff was not, at the time mentioned in the replication of the plaintiff an- occupant and possessor in common with the defendants, of the house,, in the said replication, mentioned, and; of this they put themselves upon the county.” Whereupon, a jury came,. &c. and found for the plaintiff f> 100 in damages, for which, judgment was rendered. A motion for a new trial was made and overruled. The assignment of errors, questions the sufficiency of the declaration, and the correctness of the decision overruling the motion.
Though an assault and battery amy be justified in, defence of posseion, yet a wounding cannot; but if' the intruder commiUnf an assault upon possessor-or his famile w^hen thelat-’ ter under-takes to re-, dé-fending the assault a ^avbiTusti-fled'.
The declaration contains a good cause of action, although not very formally set out. If any error has been committed prejudicial to the defendants, in the circuit court, it is to be found in the decision overruling the motion for a new trial. There was but one issue made-up. The jury were sworn to try the issue, whichturned' on the point, whether the plaintiff, at the time of the assaults, batteries and wounding complained of, was an occupant and possessor in common with the defendants of the house, from which the defendants undertook to expel the plaintiff.
The case of McIlvoy vs. Cochran, II Marshall, 276, whilst it fully supports the doctrine, that an assault and battery may be justified in defence of possession, invaded by actual force, and equally so by constructive after a request to depart, does clearly assert the princi-pie, that a wounding cannot be justified barely in de-fence of possession. If, however, the intruder commits an assault upon the possessor or his family, when the latter undertakes to remove him, then, in defending the assault, a wounding may be justified. It follows from these principles, that so much of the declaration as charges a wounding, has not been sufficiently answered *580 by the plea of the defendants. The plea is substantial' ly á good bar to the- assault and battery charged, but i s not good beyond-that. The issue which grew out of the allegations of the plea, cannot be regarded as constituting a defence broader than the plea.
■When jury is sworn to try teh issue joinb”they canppt.de-cideupon anything wtpchis noi embraced by the issue,
As the jury were sworn to try the issue alone, not tp.assess. damages for so mu.ch of the cause of action answered by the plea, they could not properly, find damages for the. wounding alleged, and which had, not been answered, If would have trans-. Cended,their province,.to decide on any thing not em-. braced by the issue. If, upon the evidence, therefore, the jury should have found the issue they were sworn io try, in favor of the defendants, the court ought to have granted a new trial, although a part of the cause of action, as alleged in the declaration, remained unanswered,. It is manifest that the damages assessed, were found by the jury, alone upon the ground, that the issue was against the defendants, for there was no evidence establishing a wounding other than that arising from the fail-Ore of the defendants to answer the charge.
The leading facts proved, were these:
Markham had been raised a member of the society denominated Shakers, established in Mercer county. The assault and battery complained of, took place on Sunday, On the preceding Thursday, the sisterhood “dealt with him,” in the second story of a brick house,, in which it may he inferred he had lived for years. The precise nature of the interview between Markham and the sisterhood is not explained'. Itmay be inferred that personal violence was inflicted on him, After this transaction, he was requested to leave the brick house, apd to remain at the tavern, forty or fifty yards distant, until Francis Voris came home, when matters could be adjusted. He consented, upon receiving a pledge from ' Dunlavy and others, that he should be well treated there, he observing the. rules and cusloms of the society on his part. Accordingly, Markham went to the tavern, On Saturday, without the knowledge of the heads of the. family or any one else, and contrary to the rules and usages of the society, as it is stated, he went .off to the country, and returned the same evening with IT. Brown, án apostate from the society. Upon his retun,; *581 Dunlavy and others told him that inasmuch as he had disregarded his contract, that they felt themselves absolved from theirs. Thereupon Markham discharged them from its observance, and said that he did not rely on the society for protection, but would seek protection from the eivil authority of the country. In consequence of Markham going to the country on Saturday, • he was refused his dinner and breakfast at the tavern. About two hours after breakfast, on Sunday morning, he came into the kitchen at the brick house,- and desired to eat something, and commenced eating, upon which the defendants came in and desired him to withdraw to the tavern, and said if he did not, they would force him. Markham refused, and thereupon the defendants took hold of him, and carried him out ofdoors. In the yard, the defendants threw Markham down, and took from him a knife with which he was eating in the kitchen, and then carried him and put him out at the gate, using no more violence, say the witnesses, than was . necessary to remove him. The hand of one of the defendants was cut by the knife, and some blood was seen on Markham’s clothes. When Markham consented to go to the tavern, it was distinctly understood, that he should forfeit none of his rights by going there, and that he should return, if things were not settled to his liking. This agreement was made with Dunlavy and others. Who the others were, is not stated, nor is it shown what authority Dunlavy had for making the agreement.
By Markham’s replication to the plea of the defendants, he admits that they held and occupied in common with others, the brick house in which he was assaulted, and from which he was removed. He thus concedes the right to the defendants, asserted by them in their plea, but he proceeds and avers that bis right was equal to theirs; wherefore, they had no right to commit an assault and battery, for the purpose of removing him upon his failure to go, on request. He concludes his replication with a verification. The rejoinder denies this right, in common, asserted by the defendant in error, and thus the issue is completed, leaving the burden of the proof with Markham, to show his interest in the premises from which he was expelled. Has he shown any thing in proof from which the jury were authorized to infer a tenancy, in' common, between him and the *582 plaintiffs in error ? We think he has not. That he had lived in the house for some time, as a member of the society, is clear enough, but what rights such membership gave him to the property, we do not judicially know. The society of Shakers is not incorporated. The articles of association by which they adhere, are unknown to us. Who has the legal title to the house in question,, we know not. Whether Markham bears the relation of cestui que use to the property, we cannot tell. Whether he was tenant at will, tenant at sufferance, tenant for years, or tenant in fee simple, during the time he lived ip the house, we know not.. The evidence gives no information upon these matters. His title, whatever it may be, is susceptible of proof,,.» If he had no title, his entry into the kitchenwas "aviolation of the admitted rights of the plaintiffs in error, and they were authorized to remove him by force, if he did not depart upon request. If the evidence can be considered as conducing"'!» sliow the least right in Markham, to-wit, that of bare occupancy, then, when he left the house at the instance of Dunlavy and others, and went to the tavern, he could not thereafter enter, against the will of those who were in actual possession, and had right and title to the property, and by such entry, shield himself from expulsion by them, on account of a former occupancy, We may entertain a guest for weeks or months, and suit fpr him,to occupy our house, and then expel him if he refuses to go on request. If he goes ofhis own accord he has no right to return against our consent, and if he does, he is a mere trespasser, and may be treated as such. He could not rely on our tolerating his former occupancy. We do not say, that this was the case of Markham; we do not believe it was; but as it does not appear what his true character was, in respect to his possession and occupancy of the house,, while he lived in it, nor what right he had to return to it, we feel bound to say that he failed to sustain the affirmative of the issue, and, therefore, the jury ought to have- found, against him. The agreement with Dunlavy, &c. that he should lose none ofhis rights by going to the tavern, amounts to nothing, unless he show he had rights to lose, which has not been done. There is not the least evidence which shows that Markham had any right to the feitchen from which he was expelled. -
Hoggin and Cunningham, for plaintiffs; Daviess and Harlan, for defendant.
How far Markham was bound to c’ónfofm to the rulés of the society, and what these rules required of him, are not now fit subjects of inquiry. Whilst the rights_!— of every citizen will be protected against all prejudicial, consequences, likely to result from rules adopted by societies or individuals, and attempted to be enforced without lawful authority; every citizen must be required and compelled, if need be, to respect and. abstain from infringing on the rights of others, whether individuals or associations of individuals. What right a seceded member of the soeiety of Shakers has to the property acquired by the joint labors of the society, during his membership, is a question not presented bj’ the facts exhibited in the present case. Upon the return of the cause, if Markham can sustain his replication, by evidence, showing an interest or title, in common with the defendants, to the house from which he was expelled, it will be then proper to inquire whether his interest so shown, or his person in the use and possession of such an interest, has been abused and maltreated by any rule of the society, or by any of its members. When a case shall be properly presented, the rights of all concerned will be defined and protected.
It seems to us that the finding of the jury was not warranted by the law, under the conditions of the pleadings and the facts proved.
Wherefore, the judgment is reversed, and the cause remanded for a new trial, not inconsistent with this opinion. The plaintiffs in error must recover their cots.